HOWELL CONTRACTORS, INC., Appellant,

v.

Charles J. BERLING; Charles Berling Land Corporation; and Berling Homes, Inc., Appellees.

No. 2010–CA–001755–MR.

Court of Appeals of Kentucky.

Nov. 2, 2012.

Kent W. Seifried, Ft. Mitchell, KY, for Appellant.

Stephen D. Wolnitzek, Covington, KY, for Appellee.

Before ACREE, Chief Judge; MOORE and VANMETER, Judges.

*OPINION*

VANMETER, Judge:

Howell Contractors, Inc. ("Howell") appeals from the April 2, 2010, order of the Kenton Circuit Court denying its motion for summary judgment against Charles Berling ("Berling") and various entities he owns, namely Charles Berling Land Corp., Berling Homes, Inc., and Westview Development, LLC ("Westview"), and granting partial summary judgment in favor of Berling, Charles Berling Land Corp., and Berling Homes, Inc. (collectively "the Berling appellees"). For the following reasons, we affirm.

Berling is the sole owner and member of Westview, an Ohio limited liability company ("LLC"). In 2005, Westview contracted with Howell, a Kentucky corporation, for Howell to provide services and materials for the development of Westview Park Subdivision in Lockland, Ohio. Over the course of several years, Howell billed Westview for payment under the contract. The amount charged totaled $1,103,569.03, of which Westview paid $923,902.06, leaving an amount owed of $179,666.97. After attempts to work out payment failed, Howell sued Westview and the Berling appellees for the amounts due. Howell also asked the court to disregard the status of Westview as an LLC under the doctrines of veil-piercing, instrumentality and alter ego, and hold the Berling appellees liable for Westview's debt to Howell.

Howell moved for summary judgment against all parties. The Berling appellees moved for partial summary judgment on the issue of their liability, emphasizing that they were not parties to the contract with Howell. They further argued that the doctrines of veil-piercing, instrumentality and alter ego do not apply to LLCs and that Howell failed to establish their application so as to prove liability. The trial court granted partial summary judgment in favor of the Berling appellees, finding that they were not liable for the obligations of Westview under the contract and dismissed each as a party. The court further found that genuine issues of material fact existed as to the amounts due to Howell and denied summary judgment against Westview. By agreed judgment entered August 23, 2010, the court ordered that Howell shall recover from Westview the amount of $179,666.97 under the contract, plus the legal rate of interest from

the date of judgment, and its costs expended herein. This appeal followed.

Summary judgment shall be granted only if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR [1] 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky.1991) (citations omitted). Further, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482 (citations omitted).

On appeal from a granting of summary judgment, our standard of review is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001) (citations omitted). Because no factual issues are involved and only legal issues are before the trial court on a motion for summary judgment, we do not defer to the trial court and our review is *de novo. Hallahan v. Courier-Journal,* 138 S.W.3d 699, 705 (Ky.App.2004).

Howell argues that the trial court erred by denying its motion for summary judgment and by granting partial summary judgment in favor of the Berling appellees on the issue of their liability under the veil-piercing, instrumentality, and alter ego doctrines. We disagree, although for reasons different from those stated by the trial court. *See Fischer v. Fischer,* 348 S.W.3d 582, 589 (Ky.2011) (stating that "[i]n instances where a trial court is correct in its ruling, an appellate court, which has de novo review on questions of law, can affirm, even though it may cite other legal reasons than those stated by the trial court[ ]").

One aspect of this case which has received scant attention by the parties is that Westview was formed under the laws of Ohio and the real estate development which gave rise to the debt in question is located in Lockland, Ohio. By analogy to corporate law,[2] the rights, duties and obligations of an Ohio LLC and its members are governed by Ohio law. *See* Restatement (Second) Conflicts of Laws § 307 (1971) (stating that "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability ... to its creditors for corporate debts[ ]"); *see also Kalb, Voorhis & Co. v. American Fin. Corp.,* 8 F.3d 130, 132 (2d Cir.1993) (holding that "[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away[ ]") (citation omitted); *U.S. S.E.C. v. Levine,* 671 F.Supp.2d 14, 33 (D.D.C.2009) (noting that Nevada law controlled the alter ego analysis, because the entity at issue was incorporated in Nevada); *In re Am. Intern. Refinery,* 402 B.R. 728, 743 (W.D.La. Bkrtcy.Ct.2008) (applying law of Nevada,

1. Kentucky Rules of Civil Procedure.

2. As stated in the introductory note to the Restatement (Second) Conflicts of Laws (1971), the choice-of-laws rules stated in Chapter 13, governing Business Corporations, should apply to other business entities to the extent they enjoy the same attributes as business corporations.

where debtor and subsidiary were incorporated); *Tomlinson v. Combined Underwriters Life Ins. Co.*, 684 F.Supp.2d 1296, 1298, 1300 (N.D.Okl.2010) (holding that the law of the state of incorporation applied to issues of piercing the corporate veil); *Rual Trade Ltd. v. Viva Trade LLC*, 549 F.Supp.2d 1067, 1077 (E.D.Wis.2008) (the general rule was that a plaintiff's alter-ego theory was governed by the law of the state in which the business at issue was organized).

While the Berling appellees argue that a piercing cause of action does not apply to an LLC, Ohio case law is to the contrary. *Ossco Props., Ltd. v. United Commercial Prop. Group, L.L.C.*, 197 Ohio App.3d 623, 968 N.E.2d 535 (2011).

In *Ossco*, the court stated the Ohio law on entity-piercing with respect to an LLC:

> Generally, in order to disregard the protections afforded by corporate or limited-liability business forms, one must show "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075.

*Id.* at 630, 968 N.E.2d at 540.

The Ohio Supreme Court has explained the stringent level of wrongdoing that is required to be met in order to pierce the corporate or entity veil:

> [T]o fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct.

*Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 513, 895 N.E.2d 538, 545 (Ohio 2008). The court held that "[i]nsurer bad faith is a straightforward tort, a basic example of unjust conduct; it does not represent the type of exceptional wrong that piercing is designed to remedy." *Id.* at 513–14, 895 N.E.2d at 545.

In the case at bar, while Howell has demonstrated Berling's control over Westview and his other entities, but the conduct complained of does not rise to the level of fraud, illegality or unlawfulness. A careful review of the record discloses that Westview has merely failed to pay an entity debt. The facts are that Westview purchased a tract of land for approximately $287,000. Westview, presumably through Berling, secured a loan in the amount of $1,000,000 from Bank of Kentucky to develop the property. Berling further loaned over $485,000 to Westview, personally and through other entities, some controlled by Berling and others not controlled.[3] The property in question is still owned by Westview. While this development has not quite panned out as planned, and Howell's preference is to be paid a little more promptly, it has a judgment which can undoubtedly be domesticated in Ohio. And, presumably, Howell exercised diligence in maintaining its security in the

---

**3.** The record shows the following unsecured loans to Westview: Berling, $250,000 (including an initial deposit of $10,000 for the land); CHB Family 1, $80,000; Candlewood Realty, Inc., $80,000; and Berling Land Corp., $75,000.

property by resort to Ohio's mechanic's lien statute. Ohio Rev.Code Ann. §§ 1311.01–1311.22.

■ Further, even if we consider this case under Kentucky's standards for entity-piercing, *Inter–Tel Techs., Inc. v. Linn Station Props., LLC,* 360 S.W.3d 152 (Ky. 2012), we would reach the same conclusion. In *Inter–Tel,* the Court extensively analyzed the history and current state of corporate veil-piercing, and came to the following conclusion:

> A Kentucky trial court may proceed under the traditional alter ego formulation or the instrumentality theory because the tests are essentially interchangeable. Each resolves to two dispositive elements: (1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice. In assessing the **first** element, the courts should look beyond the five factors enumerated in *White [v. Winchester Land Dev. Corp.,* 584 S.W.2d 56 (Ky. App.1979) ] to the more expansive lists of factors discussed *supra.*[4] As to the *second* element, the trial court should state specifically the fraud or injustice that would be sanctioned if the court declined to pierce the corporate veil.

*Id.* at 165 (emphasis added). Thus, under Kentucky law, two elements must be met: (1) the loss of corporate or entity separateness, as established by analysis of the eleven factors; and (2) the sanctioning of fraud or promoting injustice. Citing with approval a Seventh Circuit Court of Appeals case, *Sea–Land Servs., Inc. v. Pepper Source,* 941 F.2d 519 (7th Cir.1991) (applying Illinois law), the Kentucky Supreme Court stated that either sanctioning fraud or promoting injustice satisfies the second element. The Court emphasized, however, that "the injustice must be some wrong beyond the creditor's mere inability to collect from the corporate debtor." *Inter–Tel,* 360 S.W.3d at 164 (citing *Sea–Land,* 941 F.2d at 522–23). The Court's examples of injustice included "where 'a party would be unjustly enriched; [where] a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful.'" *Inter–Tel,* 360 S.W.3d at 164 (quoting *Sea–Land,* 941 F.2d at 524).

Again, Howell has established its present inability to collect a debt owed. It has not established fraud or unjust enrichment of the type demonstrated in *Inter–Tel, i.e.,* the "squirrel[ing of] assets into a liability-free corporation while heaping liabilities upon an asset-free corporation[.]" *Id.* The record does not disclose that Berling siphoned money or assets out of Westview. To the contrary, Berling put money into Westview, primarily his own, in the form

---

4. The factors which tend to indicate a lack of corporate/entity separateness as set forth in *Inter–Tel* are (a) the parent corporation owning all or most of the stock of the subsidiary; (b) common directors or officers; (c) the parent financing the subsidiary; (d) the parent incorporating the subsidiary; (e) the subsidiary has grossly inadequate capital; (f) parent pays salaries, expenses, or losses of the subsidiary; (g) subsidiary's lack of business ex-
cept with the parent or no assets except those conveyed by the parent; (h) subsidiary described by the parent as a department or division; (i) parent uses the subsidiary's property as its own; (j) subsidiary's executives fail to act independently; and (k) failure to observe subsidiary's legal requirements. 360 S.W.3d at 163–64. No reported Kentucky decision discusses the piercing of an LLC entity.

of unsecured loans. As noted, Westview has assets in the form of a real estate development, and Howell, as a judgment creditor of Westview, will presumably be able to collect its judgment, with interest, as and when Westview's property in Ohio is sold.

The order of the Kenton Circuit Court is affirmed.

ALL CONCUR.