DIXON, JUDGE:
Appellants, Behram Tavadia and Tavadia Enterprises, Inc. (collectively "Tavadia"), appeal from an opinion and order of the Jefferson Circuit Court, following a bench trial finding in favor of Appellee, Sheri Mitchell, and dismissing Tavadia's claims of breach of fiduciary duty, misappropriation and conversion of company assets, forgery, and fraud.
In April 2013, Mitchell started One Sustainable Method Recycling, LLC ("OSM"), a company that contracted with healthcare providers to assist in the recycling of healthcare waste, such as plastics and sharp metal objects. OSM accepted the materials from the healthcare facilities at its Louisville warehouse and prepared them for recycling. Initially, Mitchell was a 99% owner of OSM and was the acting CEO. Ahmet Mehta held the other 1% ownership interest. Shortly after OSM's start-up, Mitchell approached Tavadia,[1] *325 who lived in Florida, about investing in the company.
In June 2013, OSM and Tavadia Enterprises, Inc., a Florida corporation owned solely by Tavadia, entered into a loan agreement wherein Tavadia loaned OSM $40,000 with interest accruing at a rate of 6% per year. The agreement provided that OSM would repay Tavadia $1,000 per month and further that Tavadia would acquire a 5% interest in OSM's yearly profits. Mitchell did not execute a personal guaranty for the loan. After securing the loan from Tavadia, OSM received an additional $150,000 loan from Louisville's Metropolitan Business Development Corporation ("METCO"). Tavadia assisted OSM in securing that loan by signing a "Security Agreement and Pledge of Bonds," as well as agreeing to act as a personal guarantor for the METCO loan to OSM.
By the beginning of 2015, OSM had not made any payments on the loan agreement with Tavadia nor paid any profits, as the company had yet to realize such. However, instead of invoking the loan agreement's acceleration clause and demanding payment of the outstanding balance, Tavadia agreed to delay repayment of the loan based upon Mitchell's representations that OSM was making money but that all funds were going to pay expenses. Subsequently, in February 2015, OSM and Tavadia entered into a second loan agreement, which incorporated the first $40,000 loan. The second loan agreement provided OSM with an additional $250,000 for equipment that Mitchell had represented to Tavadia the company needed to purchase. In addition, the second agreement acknowledged that Tavadia had secured the METCO loan in the amount of $150,000, and also memorialized an additional $12,000 loan that Tavadia had made to OSM in the fall of 2014. Finally, the second loan agreement provided that Tavadia would receive a 25% ownership interest in OSM and 25% of net monthly profits. Again, Mitchell did not execute a personal guaranty for the second loan.
Despite the second loan between OSM and Tavadia, OSM's financial situation continued to deteriorate. Between April 2014 and September 2015, OSM incurred $14,540 in overdraft charges. In August 2015, OSM obtained a $20,000 loan from Fundworks, LLC. Mitchell signed the loan in both her and Tavadia's name on behalf of OSM, as well as signed a personal guaranty in her name and Tavadia's name. The loan carried an interest rate of 15% and required daily payments of $277.78.
By October 2015, OSM had ceased operations and Mitchell sold some of the equipment for a total of $46,899. Of that, $24,929 went into Mitchell's personal bank account and $21,970 went into OSM's account. OSM also ceased making loan payments to Tavadia.[2] It was around this time that Tavadia first learned of the Fundworks loan when a representative called demanding payment. Further, OSM defaulted on the METCO loan, and METCO contacted Tavadia stating its intent to sell or redeem the bonds he pledged.
On October 21, 2015, Tavadia filed an action in the Jefferson Circuit Court against OSM and Mitchell, individually, asserting claims for breach of contract, breach of fiduciary duty, misappropriation and conversion of company assets, and failure to allow access to company records in violation of KRS[3] 275.185. Tavadia subsequently amended his complaint to add claims for fraud, relating to bank records *326 indicating Mitchell had paid for personal expenses out of OSM's bank account, as well as forgery and fraud relating to Mitchell's signing of Tavadia's name on the Fundworks loan.
The record indicates that Mitchell proceeded without counsel and attempted to represent both her individual interests and OSM's interests. However, the trial court informed her that although she could personally proceed pro se as to the causes of action against her individually, she could not represent OSM, as she was not an attorney. Counsel was never retained to represent OSM and, on August 12, 2016, the trial court entered a default judgment against OSM in the amount of $302,000.
A bench trial was conducted on May 26, 2017, on the claims against Mitchell and whether she could be held personally liable for OSM's debts to Tavadia. On August 4, 2017, the trial court entered an opinion and order dismissing all claims against Mitchell. Citing to the factors set forth in Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC , 360 S.W.3d 152 (Ky. 2012), the trial court concluded that the evidence did not support piercing OSM's corporate veil to hold Mitchell personally liable for OSM's debts to Tavadia. Further, with respect to the claims related to the Fundworks loan, the trial court concluded:
The Court concludes that Ms. Mitchell signed Mr. Tavadia's name to the loan application and guaranty without Mr. Tavadia's permission. This could open Ms. Mitchell to personal liability under a breach of fiduciary duty, but Mr. Tavadia has not proven that he has suffered any damages. He had paid nothing to fundworks, LLC relating to this loan at the time of trial, and he has an excellent defense in the event fundworks, LLC files suit against him because Ms. Mitchell acknowledged that she signed his name to the documents. She has nothing supporting her contention that she had his permission to sign the documents on his behalf. Accordingly, damages relating to this loan are speculative at this juncture and this claim must fail.
Tavadia thereafter appealed to this Court.
As noted, the trial court conducted a bench trial in this action. Accordingly, our review is based upon the clearly erroneous standard set forth in CR[4] 52.01, which provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." "If the trial judge's findings of fact in the underlying action are not clearly erroneous, i.e. , are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion." Commownealth v. Deloney , 20 S.W.3d 471, 473-74 (Ky. 2000). However, reversible error arises when there is no substantial evidence in the record to support the findings of the trial court. M.P.S. v. Cabinet for Human Resources , 979 S.W.2d 114, 116 (Ky. App. 1998). Notwithstanding the deference due the trial court's factual findings, its conclusions of law reached after making its findings are reviewed de novo. Hoskins v. Beatty , 343 S.W.3d 639, 641 (Ky. App. 2011).
We begin by noting that Mitchell did not file a brief in this appeal. Pursuant to CR 76.12(8)(c), if an appellee does not file a brief, this Court may "(i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's *327 failure as a confession of error and reverse the judgment without considering the merits of the case." "The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." Roberts v. Bucci , 218 S.W.3d 395, 396 (Ky. App. 2007) (citations omitted). In this instance, we choose to accept Tavadia's statements of facts and issues as correct.
Tavadia first argues that the trial court erred in dismissing his claims against Mitchell related to the Fundworks loan. Although the trial court specifically found that Mitchell fraudulently signed Tavadia's name to the loan application and personal guaranty without his knowledge or permission, it nevertheless dismissed the claims because he did not prove he suffered any damages. However, Tavadia contends that the trial court should have awarded nominal damages and then considered the appropriateness of punitive damages and attorney's fees. Further, Tavadia argues that the trial court's refusal to enter a judgment in his favor on those claims has the potential to injure him should Fundworks follow through with its threat to collect on the loan. Tavadia points out that while the trial court acknowledged that he had an "excellent defense" if Fundworks attempted to enforce the personal guaranty, the lack of a judgment in his favor would likely result in his incurring additional legal expense in that he will be required to convince a different trier of fact that Mitchell forged his signature. We agree.
In Mo-Jack Distributor, LLC v. Tamarak Snacks, LLC , 476 S.W.3d 900, 907-08 (Ky. App. 2015), a jury found that the appellant committed fraud and forgery by signing the appellee's name to a contract without permission to do so. The jury awarded compensatory damages of $65,000, based solely upon evidence that the appellee had incurred that amount in attorney's fees, as well as $95,000 in punitive damages. Id. at 909. On appeal, a panel of this Court ruled that attorney's fees are not compensatory damages and thus reversed that award. Id. at 906-07. However, in addressing whether punitive damages were appropriate where no compensatory damages were proven, we concluded:
Generally, in instances where a litigant establishes a cause of action but has not established an entitlement to compensatory damages, nominal damages may be awarded. Stoll Oil Refining Co. v. Pierce , 343 S.W.2d 810, 811 (Ky. 1961). As stated, Clark does not contend nominal damages were not recoverable in this fraud action and for that reason, remand is appropriate for an award of nominal damages in an amount to be determined by the trial court. However, we instruct the trial court that amount should be consistent with Stoll , where the Court held the amount must be truly nominal. Id. We now address the punitive damages award.
The rule that punitive damages may be awarded even when a nominal amount is awarded as damages was established early in our jurisprudence in Louisville & N.R. Co. v. Ritchel , 148 Ky. 701, 147 S.W. 411, 414 (1912) (citation omitted):
It is true that there are respectable authorities which appear to hold that punitive damages cannot be awarded when the actual injury is merely nominal. In our opinion, however, this view is not correct, and does not agree with a great weight of authority. The correct rule, we think, is that if a right of action exists; that is, if the plaintiff has suffered an injury for which compensatory damages might be awarded although nominal in *328 amount, he may in a proper case recover punitive damages.
Mo-Jack Distributor, LLC , 476 S.W.3d at 907-08. In addition, a trial court may award attorney's fees in its discretion under principles of equity. Id. at 906.
Herein, the trial court took the opposite approach and, despite having found liability for fraud and forgery, dismissed the claims against Mitchell and failed to address punitive damages or attorney's fees. We agree with Tavadia that the trial court, having determined that the evidence supported a finding of liability on Mitchell's behalf, should have ruled in favor of Tavadia on his claims of fraud and forgery. Further, even if Tavadia suffered no compensatory damages, the trial court should have considered nominal damages and then addressed his claims for punitive damages and attorney's fees. The trial court clearly erred in summarily dismissing those claims.
Tavadia next argues that the trial court erred in finding that the evidence did not support piercing OSM's corporate veil to hold Mitchell personally liable for OSM's debts. Tavadia contends that the trial court ignored evidence that Mitchell engaged in fraudulent and morally culpable conduct and was unjustly enriched as a result of her actions. We must agree.
Generally, "no member, manager, employee, or agent of a limited liability company ... shall be personally liable ... for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise." KRS 275.150(1). Such principle is true even if the limited liability company has only a single member or manager. Id. However, piercing the corporate veil is an equitable doctrine that may be invoked to allow a creditor recourse against the shareholders of a corporation.[5] Inter-Tel Technologies, Inc., 360 S.W.3d at 155. Piercing the corporate veil makes the corporation's debt "enforceable against those who have exercised dominion over the corporation to the point that it has no real separate existence." Id. "The burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation." Pro Tanks Leasing, 988 F.Supp.2d at 783 (citing Corrigan v. U.S. Steel Corp. , 478 F.3d 718, 724 (6th Cir. 2007) ).
In Kentucky, the corporate veil may be pierced when two dispositive elements are proven: "(1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." Inter-Tel Technologies, Inc. , 360 S.W.3d at 165. See also Howell Contractors, Inc. v. Berling , 383 S.W.3d 465, 469 (Ky. App. 2012). In Inter-Tel Technologies, Inc. , our Supreme Court held that to assess the first element, courts should analyze the following factors:
(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the *329 corporation is a mere façade for the operation of the dominant stockholders.
360 S.W.3d at 163 (quoting Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec , 529 F.3d 371, 379 (7th Cir. 2008) ). These factors are not simply a checklist to determine if the first element is met. Rather, a trial court should examine the factors with more emphasis placed on three factors: grossly inadequate capitalization; egregious failure to observe corporate formalities; and a high degree of control over the corporation's day-to-day operations and decisions. Id. at 164.
To assess the second element, "the trial court should state specifically the fraud or injustice that would be sanctioned if the court declined to pierce the corporate veil." Id. at 165. Although evidence of actual fraud is not required to meet this element, "the injustice must be something beyond the mere inability to collect a debt from the corporation." Id.
In its opinion and order, the trial court found that Tavadia did not produce sufficient evidence to support piercing OSM's corporate veil. While the trial court did, in fact, discuss several of the factors enunciated in Inter-Tel Technologies, Inc. in concluding that Tavadia failed to establish the first prong of domination of the corporation resulting in a loss of corporate separateness, we must agree with Tavadia that it ignored material facts and evidence in reaching its conclusion.
With respect to the comingling of funds, the trial court concluded that (1) Tavadia had told Mitchell she could use OSM funds for living expenses since she was not drawing a salary and (2) Mitchell's personal expenditures amounted to less than what she would have been paid at minimum wage. However, we believe that such ignores the evidence of record that Mitchell did not simply use OSM funds for normal living expenses, but rather she spent thousands of dollars for extravagant personal expenses such as massages, yoga and gym memberships, hormone treatments, jewelry purchases and nail salon visits. That the monies amounted to less than what she would have been paid is irrelevant. Notably, these expenses were incurred during the same time period that OSM was failing to satisfy its obligations to multiple creditors, and incurring thousands of dollars in overdraft charges. Not only were Mitchell's expenditures far beyond average living expenses, but they detrimentally affected OSM's financial status.
Similarly, with respect to the diversion of assets, the trial court noted that although Mitchell admitted to having deposited over one half of the funds from the equipment sale into her personal account, it could not conclude that Mitchell diverted OSM assets to herself. The trial court additionally observed that "[a]lthough Ms. Mitchell technically comingled the proceeds from the sale of OSM equipment with her funds, the sale of the equipment happened at a time when it was obvious that a failure was imminent. Holding Ms. Mitchell personally liable for all of OSM's debt to the Plaintiff because she comingled these assets would be unjust."
We do not believe that the timing of the deposit is relevant to whether Mitchell diverted assets. Notwithstanding, once Tavadia proved that Mitchell deposited OSM monies into her personal bank account, Mitchell was under an obligation to show that she spent those funds on business expenses. Instead, Mitchell simply testified that she deposited the money in her personal account for "convenience" purposes and provided no further explanation or documentation. The evidence presented at trial demonstrated that Mitchell diverted OSM assets into her own account.
*330 Concerning some of the other Inter-Tel Technologies, Inc. factors, the trial court found that OSM was grossly undercapitalized, although it noted that Tavadia was aware it was a start-up company and could have protected himself by requiring Mitchell to execute a personal guaranty or post collateral. We cannot disagree. Nor can there be any dispute that OSM did not follow any corporate formalities, much less pay dividends. Finally, Mitchell and Tavadia both agreed that she was the only functioning member of OSM and had sole control over all day-to-day decisions.
The second prong of the Inter-Tel Technologies, Inc. test requires a showing of "circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." Id. at 165. See also Howell Contractors, Inc. , 383 S.W.3d at 469. In finding that Tavadia failed to satisfy this prong, the trial court concluded:
[R]ecognizing OSM as a separate entity would not sanction a fraud or promote injustice because Ms. Mitchell did not engage in morally culpable behavior. As discussed above, she was not unjustly enriched by using OSM funds for personal purchases, and the Plaintiffs cannot prove by a preponderance of the evidence that she unlawfully retained the money from the sale of OSM equipment.
Contrary to the trial court's conclusion, we believe that Mitchell was unjustly enriched from her use of OSM's funds while it was insolvent and its creditors remained unpaid. Mitchell went so far as to forge Tavadia's name on a loan application and personal guaranty to continue a source of funding. To continue to recognize OSM and permit Mitchell to avoid liability would essentially be condoning her personal use of OSM funds to the detriment of OSM and Tavadia, as an investor. Such a result would promote injustice and would excuse what we believe was morally culpable behavior on Mitchell's part.
After reviewing the record and testimony at trial, we conclude that Tavadia produced sufficient evidence to satisfy both elements set forth in Inter-Tel Technologies, Inc. to justify piercing OSM's corporate veil. As such, the trial court erred in ruling that Mitchell could not be held personally liable for OSM's debts to Tavadia.
Finally, Tavadia argues that the trial court erroneously found that he did not prove Mitchell fraudulently misrepresented the status of OSM. In finding against Tavadia, the trial court noted,
There is ... minimal evidence supporting the Plaintiff's claim of fraud; Mr. Tavadia can only establish that when soliciting the loans Ms. Mitchell presented him with a document relating to a contract OSM had with Kentucky One Health (the details remain unknown to the Court); mentioned some other potential sources of funding; and showed him some photographs of equipment OSM wanted to or may have purchased. He based his decision to loan OSM large sums of money primarily upon his friendship with Ms. Mitchell, not upon any specific business-related disclosure she made to him. This rational [sic] for extending loans is insufficient to prove Ms. Mitchell made a false material misrepresentation intended to induce Mr. Tavadia, or TEI, to loan money.
Tavadia testified at trial that he only agreed to make the second $250,000 loan to OSM because Mitchell had provided him documentation that OSM was indeed making money but that such was going to expenses and salaries, and that OSM was current on its lease obligation. In fact, the evidence at trial was that OSM had never made money and that it had actually ceased making lease payments several *331 months beforehand.[6] Further, Tavadia stated that Mitchell had represented to him that the $250,000 loan was necessary for the purchase of two pieces of equipment. In support of that request, Mitchell had provided photographs, pricing and vendor information for the equipment. Tavadia stated that during a visit to the warehouse, he did not see the equipment depicted in the pictures, and when he later contacted the vendors, he was informed that no equipment orders had been placed by OSM.
In reviewing the testimony at trial, it is concerning that Mitchell did not dispute providing Tavadia false information. Further, with respect to the equipment purchase, although Mitchell claimed that Tavadia would not have recognized the equipment when he was in the warehouse because he did not understand the recycling process, she did not ever testify that she, in fact, actually purchased said equipment. There was absolutely no documentation supporting a $250,000 purchase of equipment. While we are inclined to agree with the trial court that Tavadia initially loaned OSM money based on his friendship with Mitchell, we are also of the opinion that the record supports Tavadia's claim that Mitchell's fraudulent misrepresentations induced him to enter into the second loan agreement.
For the reasons set forth herein, we reverse the order of the Jefferson Circuit Court and remand this matter for further proceedings consistent with this opinion.
ALL CONCUR.

The record indicates that Mitchell and Tavadia had met years earlier on a cruise and had rekindled their friendship sometime in 2010.

The trial court found that OSM had made between three and seven payments on the second loan agreement.

Kentucky Revised Statute.

Kentucky Rule of Civil Procedure.

Courts treat "limited liability companies the same as corporations for purposes of liability analysis." Pro Tanks Leasing v. Midwest Propane and Refined Fuels, LLC , 988 F.Supp.2d 772, 788 (W.D. Ky. 2013).

Interestingly, Parker Commercial Storage and Distribution filed a motion to intervene claiming that OSM was $143,000 in arrears in lease payments on the warehouse. Although the motion was granted, and Parker's counsel was noticed on all pleadings, it is unclear from the record how or if that dispute was resolved.