RENDERED: SEPTEMBER 19, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0474-MR

QUEST ENERGY CORPORATION;
SAMUEL COAL COMPANY, INC.;
THOMAS M. SAUVE; AND MARK C.
JENSEN                                                          APPELLANTS


|        | APPEAL FROM KNOTT CIRCUIT COURT |
|--------|----------------------------------|
| v.     | HONORABLE KIMBERLY CHILDERS, JUDGE |
|        | ACTION NO. 21-CI-00217 |


RAY SLONE AND BARBARA
SLONE                                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Quest Energy Corporation (QEC), Samuel Coal Company,

Inc. (Samuel Coal), Thomas M. Sauve, and Mark C. Jensen (collectively, the

defendants or appellants) have appealed from the judgment of the Knott Circuit

Court, in which it granted summary judgment to plaintiffs Ray and Barbara Slone

(the Slones) and denied the defendants' cross-motion for summary judgment. In so ruling, the circuit court granted the Slones relief by piercing the corporate veil and ordering all of the defendants to be jointly and severally liable to the Slones for a judgment entered in a collateral action, *Slone v. Quest Energy Corp*, Knott Circuit Court Action No. 16-CI-00343. We affirm.

The Slones, who are married, are the previous owners of Samuel Coal, a Kentucky corporation. In 2012, the Slones were approached about selling their interest in Samuel Coal to Chilton Domestic Energy, LLC (Chilton Energy). Jensen was involved in these negotiations. In September 2012, Sauve and Jensen formed QEC, a Delaware corporation, and Chilton Energy was initially the sole shareholder, but QEC was owned by seven individuals at the time of this underlying litigation, including Sauve and Jensen. Ultimately, Samuel Coal, the Slones, and QEC entered into a contract through which QEC would acquire Samuel Coal and which required QEC to make payments to the Slones. Only some of these payments were made, which was the basis for a prior collateral action for breach of contract that resulted in a multimillion-dollar judgment in favor of the Slones.[1] This Court affirmed the judgment on appeal. *See Quest Energy Corp. v. Slone*, No. 2018-CA-001239-MR, 2019 WL 6998654 (Ky. App. Dec. 20, 2019).

---

[1] The Slones were awarded a judgment in the amount of $2,544,373.37, and the court ordered that QEC was liable to the Slones for an annual minimum of $600,000.00 in royalty payments until the remainder of the purchase price of $7,000,000.00 was paid in full.

On November 3, 2021, the Slones filed a verified complaint against the defendants seeking to pierce QEC's corporate veil and to enforce the multimillion-dollar judgment awarded in the collateral action against all defendants, jointly and severally. The Slones alleged in their complaint that QEC was formed to acquire Samuel Coal from them as an alter-ego and/or "dummy" corporation of Sauve and Jensen. The Slones sought a declaratory judgment to pierce QEC's corporate veil against Sauve and Jensen (Count I) and against all defendants (Count II).[2] In their answer, the defendants denied the Slones' claims. The parties then engaged in discovery.

On October 23, 2023, the Slones moved for summary judgment on the issue of piercing the corporate veil, citing Kentucky law. The defendants objected and filed their own cross-motion for summary judgment in December, arguing that they were entitled to summary judgment under Delaware law, which it argued the court was required to apply. They also noted that the Slones had only sought to pierce QEC's corporate veil, not that of Samuel Coal. Both sides agreed that there were no disputed issues of material fact to be decided and that the court could summarily dispose of all causes of action set forth in the complaint. In their reply,

_____

[2] The complaint also included claims for civil conspiracy, fraud, and punitive damages. The circuit court dismissed those claims, and because there are no issues on appeal involving that dismissal, we shall not address those allegations any further.

the Slones disagreed that Delaware law must apply but went on to argue that veil-piercing was proper under either Delaware or Kentucky law.

The court heard arguments from the parties on their respective motions and permitted the parties to tender proposed findings of fact and conclusions of law.

On March 25, 2024, the court entered a judgment, first finding that no material facts were disputed. Based upon the undisputed facts, the court concluded that under either Delaware or Kentucky law, piercing QEC's corporate veil was appropriate. It therefore entered a judgment in favor of the Slones, ruling that the defendants were jointly and severally liable and obligated to the Slones on the judgment in the collateral action. The court also denied the defendants' cross-motion for summary judgment.

On appeal, the appellants argue that the circuit court erred in granting summary judgment to the Slones and in failing to grant summary judgment to them.

Generally, a party is not permitted to appeal from the denial of a motion for summary judgment:

> The general rule under CR 56.03 is that a denial of a motion for summary judgment is, first, not appealable because of its interlocutory nature and, second, is not reviewable on appeal from a final judgment where the question is whether there exists a genuine issue of

material fact.  *Bell v. Harmon*, Ky., 284 S.W.2d 812
(1955).

*Transp. Cabinet, Bureau of Highways, Commonwealth of Ky. v. Leneave*, 751

S.W.2d 36, 37 (Ky. App. 1988).  However, the *Leneave* Court went on to

recognize an exception to this general rule in *Gumm v. Combs*, 302 S.W.2d 616

(Ky. 1957), which was later approved in *Loy v. Whitney*, 339 S.W.2d 164 (Ky.

1960), and *Beatty v. Root*, 415 S.W.2d 384 (Ky. 1967).

> The exception applies where: (1) the facts are not in
> dispute, (2) the only basis of the ruling is a matter of law,
> (3) there is a denial of the motion, and (4) there is an
> entry of a final judgment with an appeal therefrom.
> Then, and only then, is the motion for summary judgment
> properly reviewable on appeal, under *Gumm*.

*Leneave*, 751 S.W.2d at 37.  We hold that this exception applies in this case, which

permits the appellants to seek review of both the grant of summary judgment to the

Slones and the denial of their own cross-motion.

Our applicable standard of review of an order granting summary

judgment is as follows:

> Summary judgment shall be granted only if "the
> pleadings, depositions, answers to interrogatories,
> stipulations, and admissions on file, together with the
> affidavits, if any, show that there is no genuine issue as to
> any material fact and that the moving party is entitled to a
> judgment as a matter of law." [Kentucky Rules of Civil
> Procedure (CR)] 56.03.  The trial court must view the
> record "in a light most favorable to the party opposing
> the motion for summary judgment and all doubts are to
> be resolved in his favor." *Steelvest, Inc. v. Scansteel*

-5-

> *Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991)
> (citations omitted).  Further, "a party opposing a properly
> supported summary judgment motion cannot defeat it
> without presenting at least some affirmative evidence
> showing that there is a genuine issue of material fact for
> trial." *Id.* at 482 (citations omitted).
>
> On appeal from a granting of summary judgment,
> our standard of review is "whether the trial court
> correctly found that there were no genuine issues as to
> any material fact and that the moving party was entitled
> to judgment as a matter of law." *Lewis v. B & R Corp.*,
> 56 S.W.3d 432, 436 (Ky. App. 2001) (citations omitted).
> Because no factual issues are involved and only legal
> issues are before the trial court on a motion for summary
> judgment, we do not defer to the trial court and our
> review is *de novo*. *Hallahan v. Courier-Journal*, 138
> S.W.3d 699, 705 (Ky. App. 2004).

*Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467 (Ky. App. 2012)

(footnote omitted).

We specifically reject the appellants' assertion set forth in section C

of their brief that disputed issues of material fact remain to be decided.  In their

cross-motion for summary judgment below, the appellants specifically stated that

because there were no genuine issues as to any material fact, they were entitled to a

judgment as a matter of law, citing CR 56.03.  The appellants pointed out that the

Slones also admitted in their motion that there were no genuine issues of material

fact.  The appellants then concluded that "[t]he time has come for the Court to

summarily dispose of all of the causes of action and requests for relief contained in

the Verified Complaint."  Accordingly, we hold that there are no disputed issues of

material fact to be decided, and we shall review the legal issues *de novo*. *Howell Contractors*, *supra*.

We have reviewed the circuit court's summary judgment, and because the circuit court properly set forth the applicable law and did not commit any error in piercing QEC's corporate veil in this matter, we shall affirm its order and adopt the analysis as our own:[3]

### I. Choice of Law

Defendants [QEC, Samuel Coal, Sauve, and Jensen] have argued that because QEC is a Delaware corporation, Delaware law must apply in determining whether to pierce QEC's corporate veil, primarily relying on *Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465 (Ky. App. 2012). Plaintiffs [the Slones], on the other hand, argue that the Restatement (Second) Conflicts of Law governs, and since Kentucky has the most significant relationship to the litigation, Kentucky law applies. In *Howell*, the court addressed whether piercing the corporate veil of an Ohio limited liability company was proper, and applied both Ohio and Kentucky law, coming to the same outcome under either application of law. *Id*. For the reasons more fully stated herein, and as the court found in *Howell*, regardless of which law applies, Plaintiffs are entitled to pierce QEC's corporate veil.

### II. Under Either Delaware or Kentucky Law, Veil Piercing is Appropriate

Kentucky law dictates that piercing the corporate veil is an equitable doctrine that allows a creditor to seek

---

[3] We have corrected citations and other minor typographical errors that will not be noted in the text.

payment from the shareholders of a corporation. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155 (Ky. 2012). It makes a "corporation's debt enforceable against those who have exercised dominion over the corporation to the point that it has no real separate existence." *Tavadia v. Mitchell*, 564 S.W.3d 322, 328 (Ky. App. 2018) (quoting *Inter-Tel Technologies, Inc.*, 360 S.W.3d at 155) (internal quotations omitted). Kentucky law allows a corporate veil to be pierced when there is: "(1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel Technologies, Inc.*, 360 S.W.3d at 165.

To determine whether there has been a loss of corporate separateness, the court considers the following factors:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders.

*Id*. at 163. The most important factors are inadequate capitalization, failure to observe corporate formalities, and the degree of control over the day-to-day operations and decisions. *Id*. at 164. As for the second element, there does not need to be a showing of actual fraud, just a

showing of more than a mere inability to collect the debt from the corporation must be shown.  *Id*. at 165.

As in Kentucky, in order to determine whether a corporate veil should be pierced, Delaware law requires the court to consider several factors.  *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 707 (Del. Ch. 2021).  Said factors include:

> (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.

*Id*. at 706.  And like Kentucky, no single factor is determinative; instead, the court must consider each of the factors and determine whether there is "an overall element of injustice or unfairness."  *Id*. at 707 (citing *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015)).  A corporate veil may be pierced "to avoid fraud and injustice."  *Id*. at 710.

In short, Delaware applies an alter ego test like Kentucky's.  *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1044 n.62 (Del. Ch. 2006) (stating that Delaware applies an alter ego test) (citing *Albert v. Alex. Brown Management Services, Inc.*, 2005 WL 2130607, at *9 (Del. Ch. Aug. 26, 2005)); *see also Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992) (noting that a corporate veil of an entity may be pierced "where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner.").

Applying the Kentucky and Delaware alter ego factors supports finding that piercing QEC's corporate veil is necessary and appropriate.  First, QEC was not

adequately capitalized. Defendants admit that QEC is undercapitalized by stating that all QEC holds is Samuel Coal's stock. Defendants attempt to blame the Slones for QEC's inability to perform under the contract due to its undercapitalization, claiming that, had the Slones engaged in due diligence before signing the Acquisition Contract, they would have known that QEC had no assets. However, the Slones from the start reasonably believed they were negotiating with Chilton Energy (as embodied by Defendants Jensen and Sauve) not QEC. This illustrates how Jensen and Sauve have used QEC to benefit and shield themselves, Samuel Coal, and Chilton – all of which have and hold assets – from liability. Defendants cannot genuinely argue that QEC is sufficiently capitalized when it has no assets other than Samuel Coal stock which has no significant value.

Second, QEC is not solvent. In the Delaware case of *Manichaean Capital*, the court held that a holding company whose only asset was an interest in another company could be considered insolvent. 251 A.3d at 707. There, the company did not have a bank account, had no funds that flowed through the company, and had no prospect or ability to pay funds that it owed. *Id*. The court held that under Delaware law, that was sufficient to find that the company was not solvent. *Id*. Here QEC does not have a bank account, does not have funds flowing through it, and cannot pay the funds that it owes. Therefore, QEC is not solvent.

Third, QEC has not respected corporate formalities. Delaware law states that important formalities are matters such as companies having separate addresses, telephone numbers and email addresses for their various owners and employees. *See Manichaean Capital*, 251 A.3d at 708. In the present case, QEC lacks any separate business address, email address, or separate telephone number from the other Defendants; presumably it shares these with them. And just as importantly, Jensen and Sauve are the entire board

-10-

of directors for both QEC and Samuel Coal and were the whole board for Chilton.

Delaware, like Kentucky, considers it significant whether there are overlapping personnel and physical addresses between companies, and the presence of such is evidence that corporate formalities are not being followed. *Id.* Sauve and Jensen holding telephonic board meetings does not in and of itself support finding that corporate formalities were respected. The board meeting minutes are vague and do not mention important issues that would ordinarily be reflected in corporate minutes such as what was occurring with the many promissory notes that Jensen and Sauve made to QEC.

The fourth factor is whether there is any siphoning of company money. There is no direct evidence that money has been siphoned from QEC, but this factor alone is not determinative. The court takes a wholistic view in deciding whether the pierce the corporate veil, and no single factor is determinative. *Id.* at 706-07.

Last, QEC simply functioned as a façade for Jensen, Sauve, and Samuel Coal as well established by the fact that Jensen and Sauve are the sole members of QEC and Samuel Coal, and by the fact that QEC was created simply to hold Samuel Coal stock, which only Jensen and Sauve own. Considering the similarity of the companies' names, the overlapping personnel, and QEC's lack of a business address, phone number, and bank account further supports and illustrates that Jensen, Sauve, and Samuel Coal used and continue to use QEC as a mere façade to shield assets from liability.

It has long been recognized that companies with similar names can lead to consumer confusion, and often leads the public to believe companies are the same. *See Air Reduction Co. v. Airco Supply Co.*, 258 A.2d 302 (Del. Ch. 1969). Here, Sauve and Jensen are attempting to take advantage of the law by creating entities with

-11-

substantially similar names, in an attempt to confuse the Slones – and the public – and hide assets, while in reality using the corporate entities interchangeably. Again, suggesting that Jensen and Sauve are attempting to confuse others and such that that they can use these companies as a mere façade for their own personal benefits.

In sum, Delaware and Kentucky law requires that a corporate veil be pierced when recognizing separate corporate entities leads to "an overall element of injustice or unfairness." *U.S. v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988); *see also Inter-Tel Technologies*, 360 S.W.3d at 168 (noting that veil piercing is appropriate when continued recognition would promote injustice). Here, it is clear that Jensen and Sauve have used QEC, Samuel Coal, and Chilton (along with their other similarly named entities) to confuse the Slones and hide assets. Samuel Coal, Jensen, and Sauve have used QEC simply as a shield by creating QEC solely to hold Samuel Coal's stock, and by having no assets for which it could pay its own potential debts. From the start of negotiation the Acquisition Contract, Jensen and Sauve have improperly used various companies for their own benefit to gain new assets and attempt to eliminate their own liability for wrongful conduct. Allowing Samuel Coal, Jensen, and Sauve to continue to do so would further promote injustice and unfairness. As such, both Kentucky and Delaware law support piercing QEC's corporate veil.

For the foregoing reasons, the summary judgment of the Knott Circuit Court, both granting and denying summary judgment for the respective parties, is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Michael J. Gartland
Lexington, Kentucky

BRIEF FOR APPELLEES:

Robert E. Maclin, III
Luke Morgan
Emily M. Shepard
Lexington, Kentucky

Ned Pillersdorf
Prestonsburg, Kentucky