**COMMONWEALTH of Kentucky (Real Party in Interest) Appellant,**

and

**Ann O'Malley Shake, Judge, Jefferson Circuit Court Appellant,**

v.

**Richard L. DELONEY, Appellee.**

No. 1999–SC–0598–MR.

Supreme Court of Kentucky.

June 15, 2000.

A.B. Chandler, III, Attorney General, Frankfort, Teresa Young, Assistant Com-monwealth's Attorney, Louisville, Counsel for Real Party in Interest Appellant Commonwealth of Kentucky.

Daniel T. Goyette, J. David Niehaus, Robert W. Milburn, Louisville, Counsel for Appellee.

COOPER, Justice.

Appellee Richard Deloney was indicted by the Jefferson County Grand Jury on charges of possession of cocaine and possession of marijuana. The controlled substances were discovered during a "night vision search" conducted by Deloney's parole officer with the assistance of other law enforcement officers, including Louisville Police Department Detective Gayle Clemons. The trial judge entered a pretrial order excluding any reference during the trial to the fact that Deloney was on parole for other convictions at the time of the search. The prosecutor informed all of the Commonwealth's witnesses, including Detective Clemons, of the judge's order and directed them not to mention the words "probation and parole." At trial, Clemons was the Commonwealth's second witness. In response to the prosecutor's question, "Okay, now who knocked on Mr. Deloney's door in the apartment?," Clemons responded, "One of the probation officers, I believe it was Dawson." Defense counsel immediately moved for a mistrial. The prosecutor objected and urged the judge instead to give the jury a curative admonition. The judge overruled the objection and granted the motion for a mistrial.

Prior to retrial, Appellee moved for dismissal of the indictment asserting that a retrial would violate the constitutional proscription against double jeopardy. U.S. Const., amend. V; Ky. Const. § 13. An evidentiary hearing was held at which both the prosecutor and Detective Clemons testified that Clemons had been warned not to mention "probation and parole" both before trial and again immediately prior to being called as a witness. Clemons testified that this was his first "night vision" case, that his identification of the proba-

tion officer as a "probation officer" was unintentional, and that he found it difficult to try to concentrate on the question, the correct answer, and then how to censor the answer.

Unfortunately, I have several cases coming up like this and this last incident, that last incident scared me to death. I don't know what I'm going to do. It is very difficult to not say a word. You get to talking, somebody asks you a question, you get to thinking about the answer. It is hard to think about the, you know, the exact words to say the answer. You start thinking about the question and I'm thinking about the answer. I know I've never been in that situation.

Following the hearing, the trial judge entered a written order finding that the prejudicial comment was "inadvertent" and did not amount to "bad faith, overreaching, or some other fundamentally unfair action." The motion to dismiss the indictment was denied. Appellee then filed a petition for a writ of prohibition in the Court of Appeals to prohibit the trial judge from proceeding with the retrial. CR 76.36. The Court of Appeals granted the petition in a one-sentence order, *viz:*

Having considered petitioner's petition for writ of prohibition, and the response thereto from the real party in interest, and being otherwise sufficiently advised, this Court ORDERS that this petition be, and it is hereby, GRANTED.

The Commonwealth appeals to this Court as a matter of right. CR 76.36(7). We reverse because (1) the trial judge's finding that Clemons's violation of the pretrial order was inadvertent and not the product of bad faith was not clearly erroneous, and, thus, the denial of the motion to dismiss the indictment was not an abuse of discretion; and (2) misconduct on the part of a witness is not imputed to the prosecutor absent evidence that the prosecutor encouraged or condoned the misconduct.

## I. STANDARD OF REVIEW.

In *Southeastern United Medigroup, Inc. v. Hughes,* Ky., 952 S.W.2d 195 (1997), we discussed at length the standard of review applicable to petitions for extraordinary writs.

The decision to grant or deny the petition is committed to the sound discretion of the court.... But because discretion is also committed to the lower court ... in the conduct of its assignment, review of its action is appropriately limited. Where a petition for one of the extraordinary writs alleges that a lower adjudicatory body within its jurisdiction has acted incorrectly, and the threshold factors of inadequate remedy and irreparable injury are satisfied, the writ should be granted only upon a showing that the challenged action reflects an abuse of discretion. If the legitimacy of the challenged action presents only a question of law, the reviewing court may of course determine the law without necessary deference to the lower court or hearing officer. Where the challenge involves matters of fact, or application of law to facts, however, an abuse of discretion should be found only where the factual underpinning for application of an articulated legal rule is so wanting as to equal, in reality, a distortion of the legal rule. Application of any lesser standard for interlocutory intervention would ignore the extraordinary nature of the writs of prohibition and mandamus.

*Id.* at 199–200.

Thus, although whether to grant or deny a petition for a writ is within the appellate court's discretion, its decision in that regard will be considered an abuse of discretion if that decision amounts to an invasion of the traditional fact-finding role of the trial court. If the trial judge's findings of fact in the underlying action are not clearly erroneous, *i.e.,* are supported by substantial evidence, then the appellate court's role is confined to deter-

**474**

mining whether those facts support the trial judge's legal conclusion. In other words, deference to the trial judge's role as fact-finder applies as well to an original action as to an action on appeal.

■ As a general rule, a mistrial granted on the defendant's motion removes any double jeopardy bar to a retrial. *Stamps v. Commonwealth,* Ky., 648 S.W.2d 868 (1983); *Silverburg v. Commonwealth,* Ky., 587 S.W.2d 241 (1979). In *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), a narrow exception to this rule was recognized "where 'bad-faith conduct by judge or prosecutor,' threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *Id.* at 611, 96 S.Ct. 1075, 1081 (citations omitted). In *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Court clarified that "bad-faith conduct" means an "intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause," and "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676, 102 S.Ct. 2083, 2089. Our case law is of similar import. *Tinsley v. Jackson,* Ky., 771 S.W.2d 331, 332 (1989) ("party seeking to prevent his retrial upon double jeopardy grounds must show that the conduct giving rise to the order of mistrial was precipitated by bad faith, overreaching or some other fundamentally unfair action of the prosecutor or the court"); *Commonwealth v. Lewis,* Ky., 548 S.W.2d 509, 510 (1977) ("if there is no bad faith and the choice has not been forced upon the defendant, he is not in a position to cry double jeopardy when the trial is relaunched").

■ Appellee points to several facts indicating that the Commonwealth had a motive for desiring a mistrial. Appellee's primary defense was that he did not reside at the apartment where the drugs were found, and he asserts that the only two witnesses who could prove otherwise were unavailable at the first trial. The manager of the apartment complex had not been subpoenaed and Appellee's girlfriend had been prohibited from testifying because of a discovery violation. On the other hand, Appellee's parole officer was prepared to testify that Appellee told him sometime prior to the search that he resided at the apartment (why else would that apartment have been the subject of the "night vision search"?); and Detective Clemons was prepared to testify that Appellee admitted that he owned the jar of hair gel in which the cocaine was discovered. ("That's my hair gel, but that's not my dope.") The trial judge, of course, was not bound to adopt Appellee's theory, but was entitled to accept Clemons's explanation that his utterance of the word "probation" was unintentional and inadvertent, and to consider as well the fact that the prosecutor had objected to the mistrial order and had argued instead for a curative admonition. The bottom line is that the trial judge's finding that Clemons's comment was inadvertent and did not amount to bad faith, overreaching, or fundamentally unfair conduct was supported by substantial evidence, thus was not clearly erroneous and was binding on the Court of Appeals. *Accord United States v. Johnson,* 55 F.3d 976, 978 (4th Cir.1995); *United States v. Martinez,* 667 F.2d 886, 890 (10th Cir. 1981), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982). Since those findings required the legal conclusion that retrial was not barred by double jeopardy, it follows that the trial judge did not abuse her discretion in denying Appellee's motion to dismiss the indictment. That conclusion requires us to conclude that the Court of Appeals abused its discretion in granting the writ of prohibition.

## II. EFFECT OF WITNESS MISCONDUCT.

■ Even if the trial judge had found that Clemons uttered the word "probation" with the intent to "goad" Appellee into

moving for a mistrial, such conduct would not necessarily trigger the proscription against double jeopardy. It is "bad faith" conduct by the "judge or prosecutor" which triggers the narrow exception to the rule. *United States v. Dinitz, supra,* 424 U.S. at 611, 96 S.Ct. 1075, 1081; *Tinsley v. Jackson, supra,* at 332. In *Johnson v. Commonwealth,* Ky.App., 709 S.W.2d 838, 839 (1986), *cert. denied,* 479 U.S. 865, 107 S.Ct. 222, 93 L.Ed.2d 150 (1986), a mistrial was declared because a witness referred to the defendant as an "ex-convict." Noting that the "bad-faith conduct" rule is intended to discourage prosecutorial and judicial misconduct, the Court of Appeals rejected the defendant's double jeopardy claim because "[t]he error in the first trial was not anything willfully or intentionally injected by the prosecutor." *Id.* at 840. Similarly, in *United States v. Green,* 636 F.2d 925 (4th Cir.1980), *cert. denied,* 451 U.S. 929, 101 S.Ct. 2005, 68 L.Ed.2d 316 (1981), a federal agent testified that at the time the defendant was arrested, he was "currently incarcerated for armed robbery." Noting that there was no evidence that the prosecutor planned, anticipated or condoned the remark, the court held that a retrial was not barred by double jeopardy.

> [I]t would be too simplistic to reach out and ensnare within the term "prosecutor" every federal agent involved in a criminal matter, including those involved in the collection of evidence and the preparation for trial, although control of the prosecution is strictly in the hands of others, i.e., members of the office of the United States Attorney.

*Id.* at 928; *see also State v. Barnes,* 222 Ga.App. 875, 476 S.E.2d 646 (1996) (trial judge erred in dismissing the indictment on double jeopardy grounds after finding that a police officer witness deliberately caused a mistrial because it was her day off); *State v. Maddox,* 185 Ga.App. 674, 365 S.E.2d 516 (1988) (retrial not barred absent a showing that the prosecutor actively aided, counseled, or became a willing party to the error caused when a police officer testified that the defendant had previously been convicted of two DUI's);

*People v. Walker,* 308 Ill.App.3d 435, 241 Ill.Dec. 842, 720 N.E.2d 297 (1999) (mistrial caused by detective's testimony about the defendant's prior sexual convictions did not bar retrial where the prosecutor had specifically warned the police officer not to give such testimony and the testimony was not responsive to the prosecutor's question); *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979) (police officer's testimony on cross-examination that the defendant "flunked the polygraph" after being warned not to mention the polygraph results was not "prosecutorial misconduct").

Appellee does not claim that the assistant Commonwealth's attorney who prosecuted this case encouraged or condoned Clemons's utterance of the word "probation." In fact, Appellee's attorney conceded at the hearing on the motion to dismiss that he did not believe there was any misconduct on the prosecutor's part. Absent such a showing, dismissal would not be warranted even if Clemons had uttered the word "probation" with the intent to cause a mistrial.

Accordingly, the order of the Court of Appeals is reversed and Appellee's petition for a writ of prohibition is denied.

All concur.