# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.



**Supreme Court of Kentucky**

2018-SC-000198-MR

MICHAEL DESPAIN            APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE ANGELA MCCORMICK BISIG, JUDGE
NOS. 14-CR-000501 and 18-CR-000652

COMMONWEALTH OF KENTUCKY           APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Michael Despain received the maximum sentence of twenty years for cultivating marijuana (five plants or more) while in possession of a firearm, and trafficking in marijuana (less than 8 oz.) while in possession of a firearm. Following the jury verdict, the Commonwealth agreed to dismiss the trafficking in marijuana while in possession of a firearm conviction. Also facing additional convictions for possession of a handgun by a convicted felon and being a first-degree persistent felony offender, Despain entered a conditional guilty plea to the remaining charges. The conditional guilty plea gave Despain the right to appeal any adverse pretrial or trial rulings. After careful review, we affirm.

## I.   <u>FACTUAL BACKGROUND</u>

Louisville police officers, led by Detective Chad Stewart, raided Michael Despain's house on September 18, 2013, pursuant to a search warrant. Based

on what was recovered, Despain was indicted on charges of cultivating marijuana (five plants or more) while in possession of a firearm, trafficking in marijuana (less than 8 oz.) while in possession of a firearm, and possession of a handgun by a convicted felon.

According to the search warrant affidavit, a reliable confidential informant had provided information that "illegal narcotics, prescription pills, marijuana, along with several stolen and defaced firearms" were located in Despain's house. The affidavit stated that the informant had been in Despain's house within the last 48 hours and viewed the above referenced items and that Despain regularly kept semi-automatic weapons on his person.

When police officers executed the search warrant, they located two loaded semi-automatic handguns under the couch cushion where Despain was sitting. They also located nine marijuana plants in a lean-to structure attached to the back of the house, complete with lamps and a ventilation system. Officers seized a digital scale, rolling papers, two additional handguns located in Despain's bedroom, a marijuana grower's guidebook and a surveillance system. However, the officers did not find any illegal narcotics or prescription pills and none of the firearms were defaced.

The officers took photos of the marijuana plants, removed them from the house and ultimately destroyed them. None of the marijuana plants were sent to a laboratory for testing. At trial, the Commonwealth showed the jury photos of the plants in question and Despain admitted during his testimony that he was growing marijuana for his medical needs.

During cross-examination of Det. Stewart, defense counsel asked, "When you seize marijuana, don't you send it to the lab?" To which Stewart replied, "No, sir, the lab will not test marijuana." Sergeant Steve Healy, Louisville Metro Police Department, later testified that he has been involved in hundreds of marijuana investigations and that he always sent marijuana samples to the lab to be tested.

Despain testified in his defense at trial and explained why he was in possession of a firearm, surveillance cameras, and why he was growing marijuana. Despain claimed he suffered from a condition known as Dystonia/Torticollis, a form of tightening and spasming in the neck, since 2010. He claimed that he was prescribed two forms of expensive pain medications but that he did not like how they made him feel when he took them. As an alternative treatment, Despain testified that he began smoking marijuana regularly as a more effective form of pain management because this gave him relief.

Despain decided that he would attempt to grow his own marijuana. After doing online research and reading a marijuana grower's guide, he purchased marijuana seeds, a grow lamp, and ventilation system incrementally. Despain testified the plants were his first to grow and that they had yet to produce any buds and was uncertain that they would have. Because the buds are what contain Tetrahydrocannabinol ("THC"), his argument was that the plants may not have ever produced THC.

Despain also testified that he got the surveillance equipment and guns after a series of home invasions happened across the street in 2011 and 2012. He stated that his wife was in a vulnerable state after having brain surgery in 2012. Despain claimed that his stepdaughter's boyfriend, Officer Boeckman of the Louisville Metro Police Department, gave him the guns and helped install the surveillance equipment.

The trial court instructed the jury on both cultivating marijuana (five plants or more) while in possession of a firearm and trafficking in marijuana (less than 8 oz.) while in possession of a firearm. The same nine plants were the foundation of both charges. The jury found Despain guilty of both the crimes of cultivating and trafficking. Prior to proceeding with the secondary charges of possession of a handgun by a convicted felon and being a first-degree persistent felony offender, Despain entered a conditional guilty plea to both secondary charges and the trial court dismissed the trafficking charge. Despain was sentenced to the maximum punishment of twenty years. This appeal followed.

## II.  ANALYSIS

### A. DIRECTED VERDICT OF ACQUITTAL

Despain argues that he was entitled to a directed verdict of acquittal on the charge of cultivating marijuana while in possession of a firearm. He makes three arguments regarding this claim: 1) that the evidence was insufficient that he grew marijuana; 2) that there was insufficient evidence that he intended to transfer the marijuana; and 3) that there was insufficient evidence that he

possessed firearms in furtherance of the offense. Pursuant to the plea agreement Despain agrees that only the sufficiency of the evidence that he grew marijuana is preserved. Despain requests palpable error review as to the transfer of marijuana conviction and as to the conditional plea to possession of a firearm in furtherance of the offense.

In *Commonwealth v. Benham*, this Court established the standard for granting or denying directed verdict motions:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.[1]

We therefore review each of Despain's preserved directed verdict claims based on the evidence presented to determine if it is sufficient to persuade a reasonable juror to believe that he is guilty. Even circumstantial evidence may assist in establishing sufficient evidence for the denial of a directed verdict of acquittal, if under the evidence as a whole, it would be reasonable for a jury to find guilt.[2]

---

[1] 816 S.W.2d 186, 187 (Ky. 1991).

[2] *Hodges v. Commonwealth*, 473 S.W.2d 811, 814 (Ky. 1971).

Pursuant to *Miller v. Commonwealth*:

> Under RCr 10.26, an unpreserved error may be reviewed on appeal if the error is 'palpable' and 'affects the substantial rights of a party.' Even then, relief is appropriate only 'upon a determination that manifest injustice has resulted from the error.[3]

## i.   <u>EVIDENCE WAS SUFFICIENT TO PROVE THAT DESPAIN GREW MARIJUANA</u>

Despain argues that the evidence was insufficient to prove that he grew marijuana because the plants were not tested, and that Det. Stewart's testimony that the lab would not have conducted a test was discredited at trial by Sgt. Healy, who testified he always sent marijuana off for testing. Regardless of disputed testimonies we must examine the evidence presented as a whole and determine if sufficient evidence was presented to support the trial court ruling against a directed verdict.

When the officers initiated the search warrant, they found nine marijuana plants growing in an exterior lean-to structure attached to the rear of the house, which was not accessible from the inside of the home. The officers also found and seized grow lamps and a grow ventilation system from the structure. The officers photographed the plants seized and the Commonwealth presented these photos at trial. Officers also recovered a marijuana grower's guidebook, an inoperable digital scale and two packs of rolling papers.

---

[3] 283 S.W.3d 690, 695 (Ky. 2006).

Det. Stewart claimed that once Despain was taken outside the house, he initially claimed that all the items belonged to his wife, but eventually admitted that the guns and marijuana belonged to him. Despain counters that there was no corroborating evidence to support Det. Stewart's claim that Despain admitted the marijuana was his. There was no recording of the conversation, and Det. Stewart did not give specific details about the confession. Regardless, Despain admitted at trial to growing or "trying" to grow marijuana. He admitted to smoking marijuana as a form of pain management since 2011. Despain testified that he began doing online research on growing his own marijuana and purchased a marijuana grower's guidebook. Despain purchased ten female[4] seeds, along with grow lamps and a ventilation system to aid in his growing of the marijuana.

According to testimony, Despain claimed his plants were on day 43 of their 90 day grow cycle. He testified that at the time of seizure there were no buds present on the plants. Officers took photos of the marijuana plants and documented that they seized nine marijuana plants from Despain's home.

In a similar case, *Lundy v. Commonwealth*, the Court of Appeals examined the facts and determined that there was more than sufficient circumstantial evidence to support a finding that the plants seized were marijuana.[5] They cited facts that included: the plants were located

---

[4] Feminized seeds are the only marijuana seeds that are known to be bud-producing and to contain Tetrahydrocannabinol ("THC").

[5] 511 S.W.3d 398, 407 (Ky. App. 2017).

approximately forty feet from the home inside an outbuilding equipped for a marijuana grow operation, and that cloning solution was found indicating the grower was attempting to clone the female seeds.[6] Lundy attempted to argue that the plants seized should have been tested as they could have been hemp rather than marijuana.[7]

Despain argues that the plants removed from his home were not tested in a lab, therefore the Commonwealth failed to prove the plants seized were marijuana. However, it was clearly determined by the *Lundy* court that no tests were required to be performed[8] and held there was sufficient circumstantial evidence produced that Lundy was growing marijuana.[9]

Despain maintains that at the point the plants were seized they had not yet produced any buds, and he was unsure if they would. His argument however fails under Kentucky Revised Statute (KRS) 218A.010(28):

> "Marijuana" means all parts of the plant Cannabis sp., whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin or any compound, mixture, or preparation which contains any quantity of these substances."

Therefore, we hold it was not unreasonable that a jury could find sufficient evidence which showed that Despain was growing marijuana.

---

[6] *Id.*

[7] *Id.* at 404.

[8] *Id.* at 407.

[9] *Id.* (citing *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000)).

## ii. EVIDENCE WAS SUFFICIENT THAT DESPAIN INTENDED TO TRANSFER MARIJUANA

Despain claims a directed verdict was warranted as there was insufficient evidence that he transferred or intended to transfer the marijuana. He claims that the Commonwealth failed to produce any evidence that there was unusual foot traffic around his home, and that there were no baggies, cash, ledgers, etc. to indicate trafficking.

However, KRS 218A.1423(4) has clear statutory language on the issue, stating: "The planting, cultivating, or harvesting of five (5) or more marijuana plants shall be *prima facie* evidence that the marijuana plants were planted, cultivated, or harvested for the purpose of sale or transfer." Here, Appellant had nine marijuana plants growing, establishing the statutory presumption of cultivating for the purpose of transfer or sale.

In *Commonwealth v. Collins*, this Court held that a statutory presumption established a *prima facie* case.[10] The Court in *Collins* held:

> We agree with the Court of Appeals that the legal effect of the statutory presumption referred to above is to provide a guide for the trial court in evaluating a motion for directed verdict. When the presumption applies, there is a ***prima facie*** case of an intent to sell, thus constituting a question of fact for the jury based upon all the evidence. See Commentary to Palmore and Cooper, *Kentucky Instructions to Juries,* 4th ed., Section 7.59, *Jones v. Commonwealth,* Ky., 291 Ky. 719, 165 S.W.2d 566 (1942); *Mason v. Commonwealth,* Ky., 565 S.W.2d 140 (1978); *Wells v. Commonwealth,* Ky., 561 S.W.2d 85 (1978); and, *State v. McGee,* 18 N.C.App. 449, 197 S.E.2d 63 (1973).[11]

---

[10] 821 S.W.2d 488, 490 (Ky. 1991).

[11] *Id.* (emphasis added).

9

Certainly, with the possession of nine plants, the statutory presumption is met. Despain admits this issue regarding his intent to transfer the marijuana was not preserved below but now requests review under the palpable error standard. In order to meet the palpable error threshold the error must have seriously affected the fairness, integrity, or public reputation of the proceeding.[12] We find there to be no manifest injustice as the statutory presumption clearly established *prima facie* evidence, and it would not be unreasonable for a jury to find Despain guilty on this charge.

### iii. <u>EVIDENCE WAS SUFFICIENT THAT DESPAIN POSSESSED FIREARMS IN FURTHERANCE OF THE OFFENSE OF CULTIVATING</u>

Despain claims that the Commonwealth failed to establish a nexus between the marijuana and the firearms seized from his residence. This error must be reviewed for palpable error as it was not preserved at trial.

In *Commonwealth v. Montaque*, this Court established that a nexus must be established between possession of a firearm and the crime committed to warrant firearm enhancement.[13] The *Montaque* Court established guidance on when a sufficient nexus is established to submit a firearm enhancement charge to the jury, stating:

> First, whenever it is established that a defendant was in actual possession of a firearm when arrested, or that a defendant had constructive possession of a firearm within his or her "immediate control when arrested," then, like under the federal sentencing guidelines, the Commonwealth should not have to prove any

---

[12] *Miller*, 283 S.W.3d at 695.

[13] 23 S.W.3d 629, 632 (Ky. 2000).

10

connection between the offense and the possession for the sentence enhancement to be applicable. However, the defendant should be allowed to introduce evidence to the contrary, which would create an issue of fact on the issue.[14]

Therefore, if the Commonwealth established that Despain was either in actual or constructive possession of a firearm when arrested, then the Commonwealth sufficiently established the nexus required under *Montaque*.

In *Riley v. Commonwealth*, this Court held that the defendant's weapons were within his constructive possession and immediate control stating, "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and intention at a given time to exercise dominion and control of an object, either directly or through others."[15] The *Riley* Court continued that it was undisputed that the one of the firearms was loaded and the firearms were located near the defendant, "Appellant could have easily exercised dominion and control over the two firearms which were laying in an unobstructed location only six to eight feet from where he was sitting and where marijuana and drug paraphernalia were discovered."[16]

In *Campbell v. Commonwealth*, this Court examined additional factors to establish constructive possession, stating:

> [T]he proof was sufficient to create a jury issue as to the elements of the firearm enhancement: possession of a firearm at the time of the drug offenses were committed and possession of a firearm in furtherance of the drug

---

[14] *Id.* at 632-33 (internal citation omitted).

[15] 120 S.W.3d 622, 629 (Ky. 2003) (quoting *Johnson v. Commonwealth*, 90 S.W.3d 39, 42 (Ky. 2002)).

[16] *Id.*

11

offenses. Whether or not the gun was covered by bedding, it was found in Campbell's home and, thus, in his constructive possession. Furthermore, given its proximity to the marijuana, drug paraphernalia, and methamphetamine manufacturing equipment found, the jury could reasonably infer that it was used in furtherance of the drug offenses. Thus, the trial court properly denied the directed verdict motion pursuant to the directed verdict standard[.][17]

Despain did not have a firearm on his person at the time the search warrant was executed. However, when police arrived, Despain was sitting on his couch, watching his security monitors, with two loaded semi-automatic firearms under the couch cushion where he sat, with additional ammunition on the floor. Also, officers discovered that Despain had two additional firearms in his master bedroom, adjacent to the exterior wall where the growing structure was attached to the outside of the house.

With the guns loaded and located under the couch cushion where he sat, it was established that Despain had constructive possession of the firearms in his house and they were within his immediate control. Thus, a sufficient nexus existed to submit the firearms enhancement issue to the jury and for the jury to rationally infer that Despain possessed multiple firearms in order to further his marijuana growing activities. No error was committed by the Court and certainly, no palpable error can be established.

---

[17] 260 S.W.3d 792, 804 (Ky. 2008) (internal citation omitted).

## B. *FRANKS* HEARING REQUEST DENIED

Despain's second argument is that it was an error not to hold a *Franks* hearing pursuant to *Franks v. Delaware.*[18] We review the trial court's ruling here under a clearly erroneous standard.[19] A *Franks* hearing is held to determine whether a police officer's affidavit used to obtain a search warrant, that yields incriminating evidence, was based on false statements or omitted material facts by the affiant. To obtain a *Franks* evidentiary hearing on the affidavit's integrity, the United States Supreme Court stated:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth

---

[18] 438 U.S. 154 (1978).

[19] *Commonwealth v. Deloney*, 20 S.W.3d 471 (Ky. 2000).

13

Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.[20]

Despain's trial counsel filed a motion to compel disclosure of the identity of the confidential informant. Counsel also filed a motion asking the trial court to order the Commonwealth to turn over the 168 hours (7 days/24 hours) worth of DVR footage seized from Despain's home during the search and a motion to access the last three days (72 hours) of footage, prior to the execution of the search. The Commonwealth filed a response that Despain's motion was merely an attempt to learn the identity of the confidential informant, whose affidavit stated he/she was at the house in the 48 hours before the warrant was issued. The Commonwealth did assert that Despain's stepdaughter, who Despain believes was an "informant," was not their informant. But the Commonwealth argued that the video showed their actual informant entering the home in the 48-hour time frame. However, they argued that the disclosure of their informant was unnecessary, because the informant was reliable, was familiar with activity within the home, and that releasing the video was against the informant's penal interest.

The trial court agreed with the Commonwealth and entered an order overruling defense counsel's motion. The trial court stated that the identity of the informant was privileged pursuant to Kentucky Rules of Evidence ("KRE") 504 as disclosure was not voluntary, and the informant would not be called to

---

[20] *Franks*, 438 U.S. at 171-72.

14

testify. The Commonwealth did turn over select portions of the recordings that they intended to use at trial and assured the trial court they did not intend to use any evidence predating the execution of the search or to introduce any of the additional footage at trial.

Despain subsequently filed a supplemental motion to suppress evidence outlining why he thought the warrant was invalid. The motion said the affidavit supporting the warrant contained "intentional and or reckless omissions and misrepresentations."

First, pursuant to *Franks*, the defendant must make a substantial preliminary showing that a false statement was knowingly and intentionally included in the warrant. An affidavit supporting a search warrant is presumptively valid, therefore any challenge to its validity must be accompanied by an offer of proof that is more than conclusory.[21] In *Hayes v. Commonwealth*, this Court held the defendant had failed to establish that statements within the warrant were false, stating "[C]onjecture without evidence will not be considered[.]"[22]

Despain's motion to suppress does include the language "intentional or reckless." However, Despain's main claims are mostly speculations including: 1) that he knew who the informant was; 2) that he believed the informant did not see any of the items laid out in the warrant; 3) that Det. Stewart could not have gathered the information and completed the search warrant in the time

---

[21] *U.S. v. Shaffer*, 238 F.Supp.3d 913, 918 (E.D. Ky. 2017).
[22] 320 S.W.3d 93, 102 (Ky. 2010).

claimed; 4) that Det. Stewart had discussed the investigation with Despain's step-daughter's boyfriend (Officer Boeckman) and failed to disclose the information in the warrant. In making these claims, Despain fails to follow the clear rule laid out in *Franks*: "they should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."[23]

Despain did include an affidavit with his motion to suppress, but focused on the credibility of the confidential informant, what they witnessed at his home, and the items not found that were identified in the search warrant. This Court held in *Rawls v. Commonwealth* that Rawls was not entitled to an evidentiary hearing because he failed to show intentional or false statements, rather he attacked the reliability of the confidential informant.[24] In *Lovett v. Commonwealth*, the Court opined that "the level of detail provided by the confidential informant in this case, in addition to his statement of first-hand observation, lends significant reliability to the information he provided."[25] It is up to the magistrate judge to review the information provided within the four corners of the affidavit and make a decision of whether probable cause exists to

---

[23] *Franks*, 438 U.S. at 171.

[24] 434 S.W.3d 48 (Ky. 2014).

[25] 103 S.W.3d 72, 78 (Ky. 2003).

16

issue a warrant.[26] Here, the informant's reliability was attested to and detailed information was provided to the issuing judge that established a substantial basis to merit a finding of probable cause.

Even if the first hurdle that alleged falsities were included which led to probable cause to issue a warrant is cleared, a second hurdle remains. In examining any remaining evidence, the court may find under *Franks* that probable cause still existed to issue a warrant, and if so, then the warrant may still be found to be valid.

In *United States v. Moore*, the Court held the affidavit supported a finding of probable cause,

> So long as the magistrate "was informed of some of the underlying circumstances from which the informant concluded evidence of a crime is where he claimed it would be found, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was reliable," there is sufficient support.[27]

In *Moore,* the defendant filed a motion for a *Franks* hearing making claims that the warrant was invalid and evidence should have been suppressed.[28] During the *Moore* trial the Government openly admitted the affidavit was imperfect stating:

> [T]his was not a model affidavit. It was not written in detail, it did not name the informant and the informant was not named to the magistrate, there was no specific amount of cocaine, and there should have been more in

---

[26] *Pride v. Commonwealth,* 302 S.W.3d 43, 49 (Ky. 2010).

[27] 661 F.3d 309, 313 (6th Cir. 2011) (quoting *United States v. Smith,* 182 F.3d 473, 478 (6th Cir. 1999).

[28] *Id.* at 312.

17

> this affidavit.... This detective had more information, he could have put it in the affidavit, I don't have any reason to know ... why he didn't.... If it were up to me these warrants would be drafted differently....[29]

The *Moore* court went on to determine that this imperfect search warrant was valid, and that on its face there was enough evidence to establish probable cause, noting, "the affidavit identifies a reliable informant and establishes that informant's basis for knowledge that drugs or drug paraphernalia will be found at the residence in question. The magistrate's decision to issue a warrant on such an affidavit was not arbitrary, and so must be afforded deference by this court."[30]

Despain argues that the affidavit included statements about prescription pills, keeping semi-automatic weapons on his person, and defaced firearms that were false and make the warrant invalid. The affidavit stated correctly that Despain was a convicted felon, it precisely noted previous convictions, it accurately indicated the correct areas to be searched, it established the "persons" to be seized, noted that marijuana was present at the address given by the informant, that firearms were located at the residence, and it included mention of a surveillance system to be seized.

Therefore, we determine that even if certain incorrect statements within the warrant were stripped from the affidavit, sufficient accuracies remain, and the search warrant remains valid and thus reversal is unwarranted.

---

[29] *Id.* at 313.

[30] *Id.* at 312.

18

## C. <u>ALLEGED SEARCH WARRANT SIGNATURE DISCREPANCY</u>

Despain argued that the duplicate search warrant and search warrant affidavit, both signed by Judge Perry, seemed to have different signatures on the search warrant and it or its copy were "forged." Despain believed that the forms were forged by the officers at his house and then back-dated later. However, he provides no evidence to support his claim that the documents are forged except that the signatures looked different to him. Rather, he argued that he should have been able to question Judge Perry regarding the alleged discrepancy.

The trial court reviewed the signatures and concluded that there did not appear to be any irregularities. Despain argues that the forgery issue is preserved because his plea agreement allowed him to appeal any adverse pretrial motions. Since the plea agreement did not limit which pretrial issues could be appealed, we find that his objection prior to trial as to the forged signature allegation is preserved. However, since the warrant is valid on its face, the defendant has the burden of establishing the invalidity of the warrant.[31] Here, Despain presented an argument that was grounded in speculation. When he brought up the issue at a preliminary conference the trial judge listened to Despain's concerns and examined the documents. The trial court found no reason to suspect the warrant documents had been forged. In *Commonwealth v. English,* "the test for abuse of discretion is whether the

---

[31] *Strong v. Commonwealth,* 180 S.W.2d 560, 561 (Ky. 1944).

trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[32] Despain now brings the issue before us with the argument that if the documents had been forged, then the warrant and everything stemming from the warrant may be suppressed.

In *Deloney*, the Court held,

> "[i]f the trial judge's findings of fact in the underlying action are not clearly erroneous, *i.e.*, are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion. In other words, deference to the trial judge's role as fact-finder applies as well to an original action as to an action on appeal."[33]

In the present case we must defer to the trial judge as the true finder of fact. Judge Bisig heard Despain's concerns, reviewed all documents presented, and provided Despain with her reasoning for denying his requested hearing on the authentication of the document. Despain offered nothing further to support his speculation. Once the trial court denied his initial requests in the May 2014 pretrial conference, Despain's counsel never objected or raised the issue again during pretrial proceedings. Issues regarding the signature authenticity were also not raised at the 2017 suppression hearing.

Therefore, we do not find that the trial court erred in not holding a hearing regarding the allegations of a forged search warrant.

---

[32] 993 S.W.2d 941, 945 (Ky. 1999).

[33] *Deloney*, 20 S.W.3d at 473-74.

# D. REVERSIBLE ERROR DID NOT OCCUR WHEN THE LEAD DETECTIVE TESTIFIED THAT HE DEALS WITH VIOLENT CRIMINALS

Despain's last argument is unpreserved; therefore, we review for palpable error to determine if it was overly prejudicial when the lead detective stated during his testimony that in his role he deals with violent criminals. "The palpable error rule mandates reversal when 'manifest injustice has resulted from the error.'"[34] In order to grant relief we must conclude that the error resulted in manifest injustice. This Court explained in *Miller v. Commonwealth*:

> We note that an unpreserved error that is both palpable and prejudicial, still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice; in other words, unless the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006).[35]

At trial, Det. Stewart testified about his lead role in the investigation and that he was a detective within the "Violent Incident Prevention Enforcement and Response" ("VIPER"). Stewart explained, "my job as a major case detective is, not only to respond to shootings and things of that nature, but, the prevention and enforcement aspects of it is I target violent criminals with guns."

When the Commonwealth asked Det. Stewart which part of Louisville was his assigned area, he replied, "I work all over the entire city. I'm not

---

[34] *Murphy v. Commonwealth*, 509 S.W.3d 34, 42 (Ky. 2017) (quoting *Elery v. Commonwealth*, 368 S.W.3d 78, 98 (Ky. 2012)).

[35] *Miller*, 283 S.W.3d at 695.

21

specific to one area. Basically, wherever there's a violent criminal, that's where I go."

It has long been held that when an appellate court reviews for an error not raised, the error must have impacted the outcome of the trial court's decision.[36] In *United States v. Cotton*, the defendant argued that the indictment's failure to include the quantity of drugs involved in the conspiracy rendered enhanced penalties erroneous.[37] The error was not preserved and thus reviewed for palpable error. The Supreme Court held that the evidence showing the conspiracy involved at least 50 grams of cocaine was "overwhelming" and "uncontroverted."[38] Therefore, any error did not seriously affect the fairness and integrity of the trial court's decision.[39]

When asked by the Commonwealth to describe the scope of his duties Det. Stewart testified that he investigates violent criminals. Defense counsel did not object and therefore failed to preserve any error. Since Despain only reserved the right to appeal adverse rulings and without a trial court ruling on the issue, there is no adverse ruling to appeal. Regardless, we have reviewed Despain's argument for palpable error.

Despain argues that this testimony was prejudicial, and that evidence of criminal conduct other than what he is accused is inadmissible. In reviewing

---

[36] *United States v. Olano*, 507 U.S. 725, 734 (1993).

[37] 535 U.S. 625 (2002).

[38] *Id.* at 634.

[39] *Id.*

the issue for palpable error as requested, we hold that the trial court outcome in this case would not have been different. The evidence before the trial court was overwhelming. Despain was in possession of multiple semi-automatic handguns, he was growing nine marijuana plants, and he was a convicted felon in possession of a handgun. Therefore, we hold there was no palpable error.

Having reviewed the record thoroughly, we affirm each of Despain's convictions.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, J.J.; sitting. All concur. Nickell, J.; not sitting.

COUNSEL FOR APPELLANT:

Steven Jared Buck
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear,
Attorney General of Kentucky

Gregory C. Fuchs,
Assistant Attorney General of Kentucky

Jason Bradley Moore,
Assistant Attorney General of Kentucky