RENDERED: MARCH 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0893-MR

RICHARD TYLER BARNES                               APPELLANT

                  APPEAL FROM TAYLOR CIRCUIT COURT
v.                HONORABLE KAELIN G. REED, JUDGE
                  ACTION NO. 21-CI-00011

ALETA RENZELLI AND DEREK
WRIGHT                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND CETRULO, JUDGES.

ACREE, JUDGE: Richard Tyler Barnes (Tyler), Appellant, appeals the Taylor

Family Court's May 12, 2022 Order redesignating the primary custodian of the

minor child at the center of this case, and modifying the parties' timesharing

arrangement to reduce Tyler's time shared with the child. We affirm.

# BACKGROUND

Tyler and Appellee Aleta Renzelli began dating in or around May of 2016. Aleta lived in West Virginia. Tyler traveled from Kentucky to visit her. Tyler and Aleta had sex during the first week of July. Aleta also had sex with Appellee Derek Wright on or around August 10. Aleta discovered she was pregnant two weeks later. Because Aleta had her period after having sex with Tyler, and because Aleta's doctor estimated Aleta's date of conception was around August 10, Aleta all but knew Derek was the father.

However, Aleta told Tyler she was pregnant with his child. Aleta believed Tyler was more capable of providing for the child's needs, considering Derek did not have a job and was a student. Aleta also told Derek she was pregnant and assured him he was not the father.

Aleta gave birth to the child on May 1, 2017. Tyler was present. Tyler and Aleta planned to marry and so they decided to give the child Tyler's last name. Tyler, Aleta, and the child lived together after Aleta was discharged from the hospital. Tyler began working eighty hours per week to support them.

Around the child's first birthday in 2018, Derek began to suspect that the child was his. Derek asked Aleta whether she was sure he was not the father. Aleta again assured Derek that the child was not his.

Tyler and Aleta separated in 2019. Aleta and the child moved into an apartment in Campbellsville, Kentucky. Tyler worked overtime to provide financial support to Aleta. Though Tyler and Aleta began living together again in the fall of 2019, the pair terminated their relationship finally in July 2020, but continued to share the same abode.

Derek saw pictures of the child on social media and, now that the child was older, believed the child looked like him. He confronted Aleta about his suspicion. Aleta told Tyler he was not the child's father in December of 2020, and she moved to West Virginia in January 2021.

Tyler filed the underlying custody action on January 13, 2021. Aleta filed a DNA test in the record which showed, with near certainty, that Derek was the father. On July 9, 2021, the family court awarded joint custody to Tyler, Aleta, and Derek. The court also ordered two timesharing schedules. The first applied if Aleta continued to live more than one hundred miles from Campbellsville and identified Tyler as the primary residential custodian. The second would apply if Aleta lived within a hundred miles of Campbellsville, and established Aleta as the primary residential custodian. Though Aleta initially planned to move back to Kentucky – and did live with her mother in Bowling Green for a brief period – she ultimately returned to West Virginia.

Tyler and Aleta agreed to a flexible equal timesharing arrangement which could be adjusted depending on their work schedules. This arrangement was expected to continue until August 2022, at which point the child would begin school in Kentucky. However, Tyler began to doubt Aleta would enroll the child in Kentucky.

On March 7, 2022, Tyler filed a motion to enforce the family court's July 9, 2021 order. Shortly thereafter, on March 15, 2022, Derek filed a motion to modify timesharing. The family court held a hearing on both motions on March 22, 2022. The child began preschool in West Virginia that March.

On May 12, 2022, the family court entered its order granting Derek's motion to modify timesharing. The family court designated Derek as the child's primary custodian, determining this change to be in the child's best interest "[d]ue to the change in circumstances, specifically, [the child]'s acclimation to West Virginia, his strong bond with Derek, and his now established relationships with his family in West Virginia[.]" (Record (R.) at 221). The family court also modified timesharing, with Tyler no longer receiving equal parenting time. The court denied Tyler's motion to enforce as moot.

The family court denied Tyler's subsequent motion to alter, amend, or vacate, and he now appeals.

# STANDARD OF REVIEW

When reviewing decisions related to child custody, appellate courts review a family court's factual findings for clear error. *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005) (citations omitted); CR[1] 52.01. A family court's factual findings are clearly erroneous if they are unsupported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citing *Commonwealth v. Deloney*, 20 S.W.3d 471, 474 (Ky. 2000)). Substantial evidence is "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citing *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)).

"If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion." *B.C.*, 182 S.W.3d at 219 (citations omitted). A trial court has abused its discretion when its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

---

[1] Kentucky Rules of Civil Procedure.

## ANALYSIS

Tyler argues the family court erred by applying KRS[2] 403.320 – which governs modification to visitation – instead of KRS 403.340 – which governs modification of custody decrees. He argues the family court did so in violation of *Crossfield v. Crossfield*, 155 S.W.3d 743 (Ky. App. 2005). In determining whether changing the primary residential custodian from one parent to another "is subject to the statutes relating to modification of custody or subject only to the statute concerning visitation modification[,]" this Court concluded in *Crossfield* such change constituted a modification of the joint custody arrangement, and thus the stricter requirements of KRS 403.340 applied. *Crossfield*, 155 S.W.3d at 745-46.

However, the Kentucky Supreme Court overruled *Crossfield*'s holding in *Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008). In *Pennington*, the Kentucky Supreme Court stated specifically that redesignation of a parent as the primary residential parent "would be a modification of timesharing under joint custody." *Id*. at 769 (citations omitted). *Pennington* does not cite *Crossfield* directly. *See id*. However, the Supreme Court in *Shafizadeh v. Bowles* plainly confirmed *Pennington* overruled *Crossfield*. 366 S.W.3d 373, 375-76 (Ky. 2011). "[U]nder *Crossfield*, a change in the primary residential custodian status was a

---

[2] Kentucky Revised Statutes.

modification of custody." *Id*. at 375. "This holding is overruled by *Pennington*." *Id*. "Under *Pennington*, a parent seeking to become a primary residential parent in a joint custody arrangement is seeking a change in timesharing, not custody." *Id*.

Tyler contests the family court's decision to redesignate Derek as the child's primary residential custodian pursuant to a joint custody arrangement in which Tyler, Aleta, and Derek participate. Under such facts, the Kentucky Supreme Court makes clear that such a change in status constitutes a change in timesharing. Accordingly, the family court did not err when it applied KRS 403.320 to decide Derek's motion.

Naturally, we must now determine whether the family court misapplied KRS 403.320(3) to modify the parties' timesharing arrangement. As this statute provides, "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child[.]" KRS 403.320(3).

Appellant insists that, in order to determine what constitutes the child's best interest for the purpose of KRS 403.320(3), we must turn to the eleven factors which KRS 403.270(2) supplies. Our jurisprudence makes clear this is not so. While KRS 403.270 addresses the initial custody determination, KRS 403.320 governs modification of visitation or timesharing. *Layman v. Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020). KRS 403.320 does not provide the same rebuttable

presumption found under KRS 403.270 that equal timesharing is in the best interest of the child. However, the most convincing evidence that application of KRS 403.320(3) does not require that we turn to the KRS 403.270(2) factors is found by comparing KRS 403.340, the custody decree modification statute; when deciding whether to modify a prior custody decree, courts are specifically required to weigh, among other considerations, "[t]he factors set forth in KRS 403.270(2) to determine the best interests of the child[.]" KRS 403.340(3). Had the legislature intended courts to consider the KRS 403.270(2) factors when determining a child's best interest sufficient to modify timesharing under KRS 403.320(3), the legislature could have drafted 403.320(3) accordingly.

With this in mind, we detect no error in the family court's decision. The court considered the changes in the child's life. The child is doing well in West Virginia and is developing a close relationship to Derek and Derek's extended family. (R. at 220-21). The court observed the child's closest relationship between the three custodians is with Derek. *Id.* And the court noted Derek "has fulfilled all obligations one would expect of a father since being granted custody of [the child]." *Id.* at 220.

Because substantial evidence supports the family court's findings, and because the family court did not abuse its discretion in designating Derek as primary custodian and modifying the parties' timesharing arrangement, we affirm.

## CONCLUSION

Based on the foregoing, we affirm the Taylor Family Court's May 12, 2022 Order.

ALL CONCUR.

BRIEF FOR APPELLANT:

Bryan E. Bennett
Lexington, Kentucky

BRIEF FOR APPELLEE DEREK WRIGHT:

Wesley E. Bright
Campbellsville, Kentucky